JOSEPH WHITE AND THOMAS WHITE, <br> vs. <br> THE OKISKO COMPANY ET AL. } SEPTEMBER TERM, 1852.

[CHANCERY PRACTICE—PROOF OF CLAIMS.]

WHERE a creditor seeks to offer new proof of his claim in the interval between the final report of the Auditor, made under the directions of the Court, and its ratification, though it is not matter of course, yet he will be allowed to do so under circumstances which would not entitle him to the privilege after the report has been ratified.

The general rule is not to open the account after final ratification, on the application of a creditor whose claim has been first suspended and ultimately rejected for want of proof to sustain it; yet there may be cases in which it would and ought to be relaxed.

———

[The facts of this case are fully set forth in the opinion.]

———

THE CHANCELLOR:

In this case a bill was filed by the complainants, creditors of the Okisko Company, on the 22d of June, 1849, against the said Company, and others, likewise claiming to be their creditors, praying for an injunction upon the equities stated in the bill to restrain said creditors from proceeding separately to enforce the payment of their respective claims, and for a sale

of the property mentioned in the proceedings for the benefit of all the creditors, according to their several rights and priorities. Upon this bill a decree for a sale passed on the 9th of July, 1849, appointing trustees to make the sale ; and by a subsequent order, dated the 29th of November, 1850, the creditors were warned to come in and file the vouchers of their claims within three months from the date of the order, which by the printed certificate filed among the proceedings, appears to have been duly published in two daily newspapers in the city of Baltimore, as therein required.

The trustees having bonded, proceeded to advertise the property for sale ; and after two unsuccessful attempts to sell, as shown by their report filed on the 9th of November, 1849, they on the 30th of October of that year, sold the property to Hugh Ely for the sum of $21,000. The purchaser afterwards, however, objected to the ratification of this sale upon several grounds, which it is not necessary particularly to notice. These objections were overruled, and by an order passed on the 7th of May, 1850, and for the reasons stated by the Court in an opinion accompanying the order, it was adjudged that unless the said purchaser complied with the terms by a day therein limited, the property should be resold by the trustees at his risk. (See 1 *Md. Ch. Decisions*, 392, and 2 *Md. Rep.*, 411, where the two previous opinions of the Chancellor in this case are reported.)

Ely, the first purchaser, not complying as directed, the trustees proceeded after due notice to resell; and on the 25th of June, 1850, made sale of the property to William D. Miller for the sum of $15,000, and this sale was duly ratified and confirmed on the 18th of November, 1850.

The case having then gone to the Auditor, in conformity with the practice, that officer, on the 7th of June, 1851, made a report distributing the net proceeds of the sale among the creditors of the Okisko Company, but stating objections to a number of the claims for the want of proof, &c. This report, which may be regarded as experimental, though made after the time limited for creditors to come in had expired, was filed

on the 9th of June of the same year. Its object was to bring before the Court, and in the presence of each other, the several creditors who claimed to be entitled to participate in the fund, to enable each to ascertain what objections would be made to his own claim, and ho whe should meet and resist, if he thought fit, the claims of his rivals; and not for the purpose of finally adjudicating upon and distributing the proceeds of the sale.

The Auditor, in this report, directs the attention of the Court to the probable existence of a claim for a sum of $1,600, founded on a proceeding in Howard District Court to enforce the mechanics' lien, which had resulted in a judgment against the Company, from which the trustees had entered an appeal (see 3 *Md. Rep.*, 168), which was still pending, and submits the propriety of suspending the distribution of the funds until the objections should be removed. The claim itself was not filed, the only knowledge which the auditor had of its existence being derived from a petition filed on the 30th of May, 1851, by the counsel who conducted the cause on the part of the trustees.

The trustees filed exceptions to this first report of the Auditor on the 17th of June, 1851; and on the 10th of July following, an order was passed sending the case back for a new audit, with directions to allow the trustees a commission of 5 per cent. on the net proceeds of the sale, in addition to the commission allowed them in the first report, upon the ground that in making the second sale they were to be treated as attorneys recovering so much of the purchase-money by legal proceedings.

In obedience to this order, the Auditor made and filed a report on the 20th of October, 1851, accompanied with an account marked B, in which the net proceeds of the sale are distributed among the creditors, whose claims were filed and properly established; and this report having, according to the rule of the Court, been submitted during the sittings of the then ensuing December Term, on the part of certain of the creditors, and at the close of the sittings laid before the Court,

in further conformity with the rule, an order passed, on the 31st of January, 1852, ratifying and confirming it, and directing the trustees to apply the proceeds accordingly, with the exception of two inconsiderable allowances to the trustees, the payment of which was suspended.

Afterwards, to wit, on the 4th of February following, Thomas Matthews, the owner of the claim founded on the mechanics' lien, and which is designated as claim No. 50 in the Auditor's statement of claims, filed his petition, in which, for the reasons therein stated, he prayed "that the order ratifying the said report might be rescinded, and that an opportunity might be afforded him to present his claim properly authenticated," which had not theretofore been done upon this petition. On the day following an order passed, rescinding the order of ratification of the 31st of January, 1852, referring the cause again to the Auditor, with directions to state another account, in which he should reserve of the proceeds of sale a sufficient amount to cover the said claim, should the same be established.

The proceedings further show, that on the 7th of February, 1852, two days after the rescinding order passed, the Auditor addressed a letter to the counsel representing claim No. 50, notifying him of the said reference, and requesting to be furnished with a short copy of the judgment, or such information as would enable him to reserve money enough for its satisfaction; and, on the 17th day of the same month and year, a short copy was filed accordingly.

On the 17th of April, 1852, the Auditor made a report, in conformity with the order of the 5th of February preceding, in which he states that in the account accompanying it, he had applied the proceeds to the payment in full of claim No. 50; but that the character of the claim did not appear, nor could he ascertain whether, if the judgment should be affirmed upon the appeal still pending, it would be entitled to priority over the judgments now filed, or any of them.

Afterwards, on the 7th of June following, exceptions were filed by a number of the creditors to this report, several of

which were specially directed against the allowance of claim
No. 50 ; and by an order, dated the 9th of the same month,
the 19th of the then ensuing July was fixed for the hearing,
with liberty to the parties in the mean time to take proof in
the usual way, and upon the usual notice, in support of their
respective claims ; and the cause coming on, to be heard upon
the exceptions, and being submitted, an order passed on the
21st of July, 1852, in which, among other things, it was said,
" The payment of claim No. 50 will likewise be suspended for
further order.  The proof in support of it is defective, but as
it is founded on the judgment of a Court of competent jurisdic-
tion, and no order has yet been passed in the cause, by which
claims not sufficiently proved are directed to be excluded, and
the fund is still under the control of the Court, it would not be
proper absolutely to reject it without giving the party an
opportunity to remove the objections to its allowance." And
the cause was, by the said order, again referred to the Auditor,
with directions to state a further and final account, from which
all claims should be excluded which were not sufficiently
proved.

In conformity with this order, the Auditor, on the 21st of
October, 1852, made his report, with an account marked D,
from which claim No. 50 was excluded, no new proof in support
of it having been produced.  This report was filed the day
after.

Exceptions were filed by Matthews, the owner of claim No.
50, to this report, upon the ground that said claim was on its
face entitled to a preference, as founded on the mechanics' lien
law.   Upon this exception no order has yet been passed ; and
on the same day, to wit, the 22d of October, 1852, the said
excepting creditor filed his petition, in which, among other
things, it is stated, that he had always understood from the
trustee who made the sale, that a proper amount of the trust
fund would be retained, to answer and abide the result of the
appeal which had been taken by the trustees against his claim,
and which was still depending in the Court of Appeals, and
praying that the cause might be again remanded to the Auditor,

with leave to the petitioner to produce the proof necessary to establish his claim, before the 30th of the month, the expense of the new audit and account to be borne by the petitioner; and upon this petition, as yet, no order has been passed. Afterwards, on the 25th of the same month and year, the petitioner filed another petition, with which he exhibits and files what he supposes to be sufficient proof of his claim, and repeating what he had said in his former petition, as to his expectation that a sum would be reserved to cover his claim, in case the Court of Appeals should affirm the judgment of the Howard District Court, he prays that the cause may be again sent to the Auditor, to state another account at his expense. Upon this petition, an order passed on the 29th of the month, in which, after observing that to grant the prayer would be contrary to the practice of the Court, and opposite to the case of *Kent* vs. *O'Hara*, 7 *G. & J.*, 212, the petition was dismissed with costs.

On the 3d of November last, Matthews filed a third petition, in which he reiterates with more fulness of detail the impression, and the grounds of the impression, upon which he and his counsel had supposed that no final order would be passed upon his claim until the appeal taken by the trustees should be heard and determined; and that he and they remained under that impression until the audit of October, 1852, was made. Upon this petition an order passed, suspending the order of the 29th of October preceding, by which the former petition had been dismissed, and for a hearing on notice to the excepting creditors, and the counsel of the parties having been heard, the question remains now to be decided.

Upon a copy of the last petition and order, the surviving trustee has endorsed and signed a statement in these words : " The undersigned surviving trustee hereby certifies that the allegation of this petition, that the claim referred to was to await the final decision of the Court of Appeals, is correct, his impression being that there was a fund to be reserved to await that issue."

The question, then, which presents itself upon these circum-

stances thus stated is, whether this party, the owner of claim No. 50, has been guilty of that kind of laches which, according to the practice of the Court, or upon equitable principles or considerations of convenience and expediency, debars him of the right to have his claim examined and decided upon its merits.

By the order of the 29th of October last, dismissing the petition filed on the 25th of that month, an opinion and judgment adverse to the petitioner was pronounced, but this was without argument on his part, and without that careful examination and consideration of all the circumstances attending this case, which I have since bestowed upon it.   The order of the 31st of January last, ratifying the report of the Auditor of the 20th of October, 1851, having been rescinded, no judgment of the Court distributing the funds stands in the way, and the question now presented is precisely that which is spoken of in *Dixon* vs. *Dixon*, 1 *Maryland Ch. Decisions*, 271, that is, the creditor asks to be permitted to come in, with new proof of his claim, in the interval between the final report of the Auditor, made under the directions of the Court, and its ratification, within which period, though it is not matter of course to let the party in to offer further proof in support of his claim, he will be allowed to do so, under circumstances which would not entitle him to the privilege after the report has been ratified.   The case of *Kent* vs. *O'Hara*, 7 *G. & J.*, 212, the decision of which I supposed at one time was conclusive against the present application, is not precisely like this.   There the final report of the Auditor had been ratified by the Chancellor, and the application was to rescind the order of ratification, and permit the party to offer further proof of his claim.   The application was refused in that case, though the Court there say : " That cases may sometimes occur, in which the rule not to open the account after final ratification, on the application of one whose claim had been first suspended and ultimately rejected, for want of proof to sustain it, might appear to operate harshly, and there may be cases in which it would and ought to be relaxed."

It is not necessary to decide here whether the general rule,

applied in *Kent* vs. *O'Hara*, would be relaxed or not, because the cases are unlike in the material circumstance, that the final report of the Auditor rejecting the petitioner's claim has not only not been ratified, but the petitioner filed his first petition for leave to offer further proof of his claim, on the same day the report itself was filed, that is, on the 22d of October, 1852. There is, moreover, this additional circumstance in favor of mitigating any general rule in its application to this case.    It appears to have been the understanding of this petitioner, that his claim, though it might be established to the satisfaction of the Court, was not to be actually paid, but that a sufficient amount of the proceeds of the sale should be reserved, to await the final decision of the Court of Appeals upon the appeal taken by the trustees; and the language employed by this Court, in the order of the 5th of February, 1852, passed upon his petition filed on the day preceding, was certainly such as to give countenance to this supposition.    In that order, after rescinding the order of the 31st of January preceding, the Auditor is directed "to state and report another account, distributing the *residue* of the proceeds of sale, first reserving from said proceeds such amount thereof as may be sufficient to pay the claim of the petitioner, should the same be established."    The order, it will be remarked, is not to apply any portion of the proceeds to *the payment* of the petitioner's claim, but to *reserve* an adequate amount for that purpose, should it be established, the residue only, after such reservation, being directed to be distributed among the other creditors.    And looking to the character of the petition, and the other proceedings in the cause, the petitioner might very reasonably assume that his claim would not be regarded as established, nor a final decision be passed upon it, until the Court of Appeals should have decided upon the appeal then and now depending in that tribunal, and this reasonable assumption might very well have been strengthened by the letter which the Auditor, with great propriety, addressed to the counsel of the petitioner two days after the date of the order. In that letter he says: "The Okisko Company case has been

referred to me to state an account, *reserving* funds to pay the claim of Thomas Matthews, should the Appellate Court decide in his favor," and asking to be furnished with a short copy of the judgment and costs, that he might ascertain the amount of the claim, or supplied with such information as would enable him to reserve money for its satisfaction.

It is certainly true that by the order of the 21st of July, 1852, the owner of claim No. 50 was apprised of the necessity of supplying more satisfactory proof, and that he is in some default for not having done so, but it is to be remembered that the account reported in obedience to that order has not been confirmed, and that on the very day the report was filed, to wit, the 22d October, 1852, the petitioner was here, by his counsel, and asked for only a delay of eight days, to enable him to furnish the evidence of his claim, and for a new audit at his expense, and that, in fact, on the 25th of the same month, being only three days after the report was filed, he did produce and file what he supposes to be sufficient proof of his claim, and repeating the offer to defray the expense of a new audit; he prayed that the proof of his claim now produced might be submitted to the Auditor for examination. This petition, as before stated, was dismissed by the order of the 29th of this month, and in so doing, I am now of opinion, upon a careful examination of the proceedings, and fuller reflection, the Court fell into error, and so thinking, I consider it my duty to repair it.

Though, as already said, I think the petitioner was in some default, yet it appears to me it is not of that gross and flagrant character, as to render it proper to shut the door of the Court in his face without ever examining his claim. It is unquestionably true, that down to the order of the 21st of July, 1852, the petitioner was warranted in supposing that no final decision would be made upon his claim until the pending appeal should be ready, and that, in the mean time, a sufficient amount to cover it would be reserved. The previous order of the Court justified him in supposing such would be the case, and this, I think (the last audit not having been confirmed), is

a sufficient excuse for the neglect of the petitioner in not furnishing evidence of his claim before that audit was filed.

The argument that the other creditors are subjected to unreasonable delay by the negligence of this petitioner, is not well founded, because those other creditors might, at any time, have received their dividends of the proceeds of sale after reserving enough to pay this claim, should it be established. The delay has grown out of the controversy in regard to this claim, that is, whether it should or should not be excluded altogether, when the true and proper question was whether a fund should be reserved to pay it, in case the Court of Appeals should affirm the judgment rendered in Howard District Court, and the claim should in other respects be entitled to be paid out of the proceeds of these sales in whole or in part.

Under all the circumstances of the case, I am of opinion that the petitioner has not forfeited his right altogether to the consideration of the Court, and I shall therefore send the case back to the Auditor, with directions to state another account at the expense of the petitioner, in which account there shall be reserved a sufficient amount to cover this claim, if, upon examining the new proof, it should be thought proper to do so, and distributing the residue of the proceeds of the sale among the other creditors according to their respective rights and priorities.

WILLIAM J. WARD, for Petitioner.
J. MASON CAMPBELL, for Complainant Creditors.